IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Gordon P. Gallagher

Civil Action No. 22-cv-00282-WJM-GPG

ALBERT MICHAEL MURRY,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,
OCWEN LOAN SERVICING, and
MESA COUNTY PUBLIC TRUSTEE,

    Defendants.

## REPORT AND RECOMMENDATION THAT MOTION TO DISMISS BE GRANTED

This matter is before the Court on Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Ocwen Loan Servicing's ("Ocwen") Motion to Dismiss (D. 32).[1] Mr. Murry did not file any response to that motion. The motion was referred to this Court (D. 34) for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### FACTS

Mr. Murry commenced this action *pro se*[2] in February 2022. As framed by his Second Amended Complaint (D. 17), in 2004, Mr. Murry took out a mortgage with Olympus Mortgage

---

[1] Except as otherwise noted, citations to (D. __) refer to the identified docket entry in this case.

[2] Mindful of Mr. Murry's *pro se* status, this Court construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction operates to overlook a *pro se* litigants grammatical errors, unfamiliarity with pleading requirements, and failure to cite authority or confusion of legal theories. It does not relieve Mr. Murry of the

1

Company, securing that mortgage with a promissory note ("Note") and a Deed of Trust to his property in Grand Junction, Colorado. Implicit, but not stated in the Complaint, is the suggestion that Wells Fargo is now representing to Mr. Murry that is now the holder of his Note and beneficiary of the Deed of Trust by assignment and is demanding payment on the Note and attempting to foreclose on the Grand Junction property. It also appears that Ocwen has represented to Mr. Murry that it is authorized by Wells Fargo to service the Note.

Mr. Murry's Second Amended Complaint raises the following claims: (i) that Ocwen first accelerated the debt secured by the Note in 2014 by commencing a NED ("Notice of Election and Demand," essentially a foreclosure proceeding under Colorado law), and that any effort to collect on that loan after 2020 is barred by Colorado's 6-year statute of limitations; (ii) that Olympus Mortgage Company was not authorized to do business in Colorado in 2004 (having been dissolved in or about 1998) and thus, the Note and Deed of Trust were not validly issued; (iii) that Ocwen "has never" been licensed to conduct business in Colorado and thus "has no standing whatsoever to foreclose" or to collect mortgage payments in Colorado; (iv) the assignments[3] of the Deed of Trust were executed in Florida and are therefore governed by Florida law, and because Florida law does not recognize such deeds, the Deed of Trust was rendered "null and void"; (v) for similar reasons, the failure to assign the Note along with the Deed of Trust renders both documents void under Florida law; (vi) that the purported assignments of the note and Deed of Trust to the Defendants are incomplete or forged; (vii) a

---

burden of complying with the substantive and procedural requirements that apply to all litigants. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[3]  It appears to be undisputed that in 2014, Mr. Murry's Note and Deed of Trust were apparently assigned from Olympus Mortgage Company to Ameriquest, and then subsequently from Ameriquest to Wells Fargo and/or Ocwen.

somewhat unclear claim, titled "Ocwen has no standing to assign [the] Deed of Trust from [a] non-existent entity," that appears to argue that MERS [non-party Mortgage Electronic Registration System] has "no standing" in this case because it (or perhaps Ocwen) "has not been named in the mortgage or deed" and that "mortgage assignments are hearsay"; (viii) a claim entitled "All mortgage servicers are impostors," that seems to allege that the purported trust that claims to current hold the Note cannot establish its ownership; and (ix) that the endorsements on the Note purporting to assign it are invalid and not established by an allonge attached to the Note.  Mr. Murry requests that the Court "deny the Defendants' claims as creditors and declare them without standing to collect mortgage payments in Colorado, without standing to foreclose and that the statute of limitations has run."

On June 15, 2022, Wells Fargo and Ocwen moved (D. 32) to dismiss Mr. Murry's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  They argue: (i) Mr. Murry has presented the same claims unsuccessfully in prior litigation, and that most of his current claims are barred by the doctrine of claim preclusion; and (ii) as to the only new claim he asserts – his claim that the statute of limitation has run – the record reflects that the Defendants undid the acceleration of the Note (*i.e.* "decelerating" it) by withdrawing the Notice of Election and Demand ("NED" – essentially, the foreclosure proceeding) action in state court.  Mr. Murry did not file a response to the motion.

## ANALYSIS

Although the Defendants' motion is captioned as one brought under Fed. R. Civ. P. 12(b)(6), the primary thrust of the motion is that the Defendants are entitled to dismissal of Mr. Murry's claims based on principles of *res judicata* and/or collateral estoppel.  Doctrines of preclusion are affirmative defenses upon which the Defendants bear the burden of proof.  *See*

3

*Taylor v. Sturgell*, 553 U.S. 880, 907 (2008); *Johnson v. Spencer*, 950 F.3d 680, 712 (10th Cir. 2020). The same is true of the Defendants' argument that Mr. Murray's invocation of the statute of limitations is without merit. Limitations defenses are affirmative in nature and the burden of proof is placed on the party asserting that the limitations period has run. *Herrera v. City of Espanola*, 32 F.45h 980, 991 (10th Cir. 2022). Technically, in this case, it is Mr. Murry who is asserting that the limitations period has run and the Defendants are asserting that it has not. But because the Defendants rely upon material outside the four corners of the Second Amended Complaint to refute Mr. Murry's factual assertions and establish their arguments, it is more appropriate to conceptualize the Defendants' motion in all respects as one for judgment on the pleadings, brought under Fed. R. Civ. P. 12(c).[4] Regardless, the analyses applicable to Rule 12(b)(6) motions and motions brought under 12(c) are identical. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

**A. Preclusion**

Because the Defendants contend that many of Mr. Murray's existing claims are precluded by prior rulings on those claims by the U.S. District Court or Bankruptcy Court, this Court applies federal principles of claim preclusion. *See e.g. Gale v. City and County of Denver*, 962 F.3d 1189, 1192 n. 1 (10th Cir. 2020) (explaining that state preclusion principles apply where the allegedly preclusive judgment was issued by a state court). Without necessarily distinguishing between the specific preclusion doctrines of *res judicata* and collateral estoppel, it suffices to

---

[4] Because the Defendants moved under Fed. R. Civ. P. 12(b), they have not yet filed an Answer that raises the affirmative defenses of preclusion. Nevertheless, the Defendants' motion is sufficient to put Mr. Murray on notice that the Defendants intend to raise those defenses and this Court discerns no obstacle to construing the Defendants' motion as one under Rule 12(c) even in the absence of an Answer.

observe that preclusion exists where "a prior judgment forecloses successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Herrera v. Wyoming*, 139 S.Ct. 1686, 1697 (2019).  To establish the appropriateness of preclusion, the Defendants must show: (i) that a judgment on the merits was issued in an earlier action; (ii) that Mr. Murray (or someone in privity with him) was a party to the prior suit; and (iii) that the cause of action or factual issue necessarily resolved in the prior action is identical to the claim or issue presented in this action.[5]  *See Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1271 (10th Cir. 2022).  Consistent with *Herrera*, the Defendants must also show that the claim or issue to be resolved was "essential to" the issuance of the prior judgment, not simply collaterally affected by a judgment that did not reach the particular claim or issue.

It is critical to note that, in the 10th Circuit, the identity of issues between the two proceedings is evaluated on a "transactional" basis.  For purposes of the preclusion analysis, a cause of action includes all claims or legal theories of recovery that arise from the same "transaction, event, or occurrence." *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997).  As a result, "[a]ll claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation." *Id.*  Any subsequent lawsuit may only involve "new claims based on facts the plaintiff did not and could not know when it filed its complaint" in the earlier action.  *Lenox MacLaren.* 847 F.3d at 1244.  If the "previously unlitigated claim [ ] could and should have been brought in the earlier litigation," preclusion may result.  *Id.* at 1245.

---

[5]   If the Defendants establish each element, Mr. Murry may show that, nevertheless, he "did not have a 'full and fair opportunity to litigate' the claim [or issue] in the prior litigation." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017).

The Defendants point out that Mr. Murray has litigated iterations of this case on at least nine previous occasions: twice in the U.S. District Court for the District of Colorado (civil case numbers 16-cv-991-JLK and 22-cv-66-GPG) and seven times in the Bankruptcy Court for the District of Colorado (bankruptcy case numbers 14-26476-SBB; 15-17879-SBB; 15-20602-MER; 15-23272-MER; 19-10959-MER; 21-14113-MER; and 22-10539-MER). The Defendants argue that the dismissal of Mr. Murry's claims in case number 16-cv-991 has preclusive effect on most of his claims in this litigation. There is no question that Mr. Murry was a party to that action and no question that a final judgment was issued against Mr. Murry in that action.[6] *See Murry v. Ocwen Loan Servicing et al.*, D.C. Colo. Civ. Case No. 16-cv-00991-JLK at Docket #19. Thus, the question before the Court is whether the issues Mr. Murry raises in this action are claims that were <u>or could have been</u> raised in that proceeding.

In 16-cv-991, Mr. Murry's Complaint named Ocwen and Wells Fargo as defendants and explained that the action alleged "wrongful foreclosure and illegal transfer of [Mr. Murry's] Note and Deed of Trust." 2016 Case, Docket #1 at 2.[7] He acknowledged that Ocwen and Wells Fargo

---

[6] As the Defendants note, the 16-cv-991 case was beset by an unusual procedural quirk. The case was originally assigned to Judge Jackson, and Judge Jackson granted the defendants' motion to dismiss and entered judgment against Mr. Murry in 2016. Mr. Murry appealed that judgment, but in 2017, the 10th Circuit dismissed his appeal as untimely, effectively rendering the judgment final. *See* Docket #27 in 16-cv-991. The case then lay dormant for some 4½ years until the Clerk's Office *sua sponte* notified the parties that, due to an oversight, Judge Jackson was subject to a conflict of interest on the case that should have resulted in his prompt recusal from the case. *Id.* at Docket #28. Mr. Murry moved to vacate the judgment against him. *Id.* at Docket #30. The case was reassigned to Judge Kane, and upon Judge Kane's independent review of the proceedings, he denied Mr. Murry's motion to vacate. *Id.* at Docket #34. Mr. Murry did not take an appeal from Judge Kane's ruling. Thus, the judgment issued by Judge Jackson remains valid and binding upon Mr. Murry.

[7] The Court will differentiate citations to the docket in Case No. 16-cv-991 by prepending those citations with "2016 Case, Docket #__." Docket citations without this qualifier refer to filings in this case, 22-cv-282.

6

were claiming to hold his Note and Deed of Trust and attempting to foreclose on the property, but he claimed that "the two assignments of his mortgage" from Olympus to, eventually, Ocwen and Wells Fargo, "are a sham transaction as [ ] Olympus [ ] ceased to exist on August 31, 2008 and that the Defendants lacked the authority to foreclose on the property." *Id.* at 7.  The action also asserted that "Ocwen and Wells Fargo N.A. . . . have continued to cite, defend, utilize, and misrepresent the Note, Deed of Trust and other documents, fabricated for the purposes of litigation, as authentic and original," said fabricated documents consisting of a "fraudulent Note, sham assignments, [and] fake signatures all created in 2014." *Id.* at 8-9.

It is clear to this Court that, although the specific claims Mr. Murry raises in the current action are somewhat different from those he asserted in 2016,[8] most of the current claims arise from the same <u>transaction</u> as that prior case – namely, his issuance of a Note and Deed of Trust to Olympus, the subsequent assignment of the Note and Deed to (eventually) Wells Fargo, and the attempts by Wells Fargo and Ocwen to foreclose on the property on the strength of the Note and Deed.  Because the claims all arise from the same contested transactions, Mr. Murry is now precluded from asserting any claims relating to those transactions that he asserted or <u>could have</u> asserted in 2016.  Taking Mr. Murry's present claims sequentially (putting aside the First Claim for Relief, sounding in timeliness, for the moment):

• Claim Two, that Olympus was defunct at the time it issued the mortgage. Mr. Murry was ostensibly aware of Olympus' dissolution date in 2016, as he asserted it to be 2008 in the

---

[8] For example, in the 2016 case, Mr. Murry seemed to concede that the mortgage transaction he engaged in with Olympus resulted in a valid Note and Deed, but that Olympus ceased existing before it assigned that Note and Deed and that any purported <u>assignment</u> thereafter was invalid.  In the current action, Mr. Murry seems to contend that Olympus was already defunct at the time he allegedly entered into the mortgage transaction in 2004, and thus, the Note and Deed are <u>themselves</u> invalid.

2016 action. In the present action, he alleges that dissolution date is actually 1998, but it is not clear when Mr. Murry ostensibly learned of this fact. It is fair to infer that, by asserting Olympus' dissolution date in the 2016 action, Mr. Murry had conducted a reasonable inquiry into the matter as required by Fed. R. Civ. P. 11(b)(3), an inquiry that, presumably, would have included consulting records of the Colorado Secretary of State that Mr. Murry references in the current matter. Certainly, Mr. Murry has not responded to the Defendants' motion here and asserted that he could not[9] have discovered Olympus' actual dissolution date until after the 2016 action had concluded. Thus, this Court finds that Mr. Murry's Claim Two in this action arises from the same transactions as the claims asserted in the 2016 action.

    • Claim Three, that Ocwen lacks legal power to act regarding the Note and Deed. As with Claim Two, this claim is predicated on Mr. Murry's review of records of the Colorado Secretary of State regarding Ocwen's registration to do business in Colorado. The 2016 action did not involve allegations regarding Ocwen's ability to do business in Colorado, but nothing in the record suggests that Mr. Murry could not have discovered the facts about Ocwen's registration at the same time he was inquiring about Olympus. Mr. Murry was clearly aware by 2016 of Ocwen's existence and its claim to be acting on behalf of Wells Fargo, as those facts are amply recited in the 2016 action. Thus, this Court finds that Mr. Murry's Claim Three in this action arises from the same transactions as the claims asserted in the 2016 action.

    • Claims Four and Five, that Florida law governs the validity of the Note and Deed following their purported 2014 assignments, executed in Florida. Mr. Murry's 2016 action made

---

[9]     The standard identified in *Lenox MacLaren* is that new claims must based on facts "the plaintiff did not and could not know" when it filed the earlier action. 847 F.3d at 1244 (emphasis added). Thus, Mr. Murry would have to show not just that he had not ascertained Olympus' true date of dissolution when he commenced the 2016 action, but show that he could not have learned of that date at that time.

no mention of the fact that the purported assignments were executed in Florida, but it is clear that Mr. Murry was aware of the specific contents of those assignments, as his 2016 Complaint references "sham assignments[,] fake signatures all created in 2014, [and] notary misconduct" relating to those assignments. Thus, Mr. Murry was aware by 2016 that the purported assignments had been executed in Florida and thus, he was required to assert his claims that Florida law applied to the Note and Deed thereafter in his 2016 action. Thus, Claims Four and Five arise from the same transactions that were at issue in the 2016 action.

 • Claim Six, Claim Seven, and Claim Nine, all of which allege that the assignments of the Note and Deed to Wells Fargo are forged, insufficiently documented, or otherwise invalid for a variety of reasons. For the same reasons discussed regarding Claims Four and Five, these claims all arise out of the 2014 assignments. A central focus of Mr. Murry's 2016 action was on the purported invalidity of the assignments and thus, these claims arise from the same transactions as the 2016 action.

 • Claim Eight, which alleges that "All mortgage servicers are impostors" and appears to challenge the validity of the assignments of the Note and Deed. D. 17 at 14 ("Mortgage servicers invent assignments out of whole cloth only for purposes of foreclosure"). To the extent this claim challenges any aspect of the assignments of the Note and Deed, it arises from the same transactions as the 2016 case for the reasons discussed above. This claim also appears to assert that documentation establishing the ownership of Mr. Murry's Note (purportedly in a real estate trust named Park Place Trust) is inadequately documented. The Complaint in the 2016 action identifies Wells Fargo as "Trustee for the Certificate Holders of Park Place Securities, Inc.," making clear that Mr. Murry was aware as of that time that Wells Fargo was acting on behalf of an entity named Park Place, the true owner of the Note. Mr. Murry's 2016 Complaint

9

specifically quotes an affidavit of Dan Schramm, purportedly the President of Park Place Securities, to the effect that "neither Wells Fargo nor Ocwen are real parties in interest." 2016 Case, Docket #1 at 10-11.  Thus, any claims Mr. Murry now makes regarding the sufficiency of documentation of Park Place's ownership of the Note are claims that were within the scope of the transactions underlying the 2016 action.

Having concluded that the Defendants have shown that all of Mr. Murry's claims in the current action (other than Claim One, discussed *infra*.) are claims that could have been raised in the 2016 action, the only questions remaining in the preclusion analysis are: (i) whether Mr. Murry had a full and fair opportunity to litigate those claims; and (ii) whether the dismissal of his claims in the 2016 action resolved his claims on the merits.  Mr. Murry does not allege, and nothing in the record suggests, that he was prevented from fully litigating his claims in 2016.  Mr. Murry filed a lengthy response to the defendants' Motion to Dismiss in that case.  2016 Case, Docket #16.  And this Court finds that the Order granting the defendants Motion to Dismiss in that case addresses each of Mr. Murry's claims on their merits, not on technical defects.  2016 Case, Docket #18.  Most prominently, the court rejected Mr. Murry's various arguments relating to alleged defects in the assignment of his Note and Deed, finding that "the person in physical possession of a note" – that is, Wells Fargo, "is the note holder" and that "a person may be entitled to enforce the instrument even though the person is in wrongful possession of the instrument."  *Id.*

Accordingly, this Court finds that the Defendants have established at all of Mr. Murry's claims here, with the exception of Claim One, are subject to preclusion as a result of the dismissal of Mr. Murry's claims in 16-cv-991.  This Court therefore recommends that the

10

Defendants' Motion to Dismiss (construed as a Motion for Judgment On The Pleadings) be granted as to Claims Two through Nine.

### B. Timeliness

That leaves Mr. Murry's Claim One. That claim asserts that the Defendants' ability to foreclose on the Note and Deed is time-barred because the Defendants' commencement of NED proceedings against Mr. Murry in 2014 operated to accelerate the full indebtedness of the Note, and any effort to now assert non-payment on the Note would be be barred by Colorado's six-year statute of limitations applicable to liquidated debts. *See* C.R.S. §13-80-103.5. The Defendants concede that the filing of a NED action operates, as a matter of law, to accelerate the debt secured by a promissory note and declare the entire principal immediately due and owing, triggering the six-year limitations period to begin running as to the remaining balance of the debt. *See Bank of New York Mellon v. Peterson*, 442 P.3d 1006, 1010 (Colo.App. 2018). But the Defendants argue that, by abandoning a foreclosure proceeding, they may <u>decelerate</u> the debt, returning it to a loan repayable by the debtor in installments and resetting any limitations period that began running as to the accelerated debt. *See Paggen v. Bank of America, N.A.*, 781 Fed.Appx. 779, 784-85 (10th Cir. 2019) (predicting Colorado law), *citing Petersen*, 442 P.3d at 1010-11. Although the facts of *Petersen* involved the creditor manifesting its deceleration of the note "by not only withdrawing the foreclosure but also by communicating its abandonment to the borrower," 442 P.3d at 1011, *Paggen* appears to conclude that simply withdrawing the NED and request for sale suffices to automatically decelerate the debt. 781 Fed.Appx. at 785-86 ("Roughly two years later, on July 28, 2011, BANA withdrew the NED, which decelerated the note. . . Each time BANA withdrew a NED, it abandoned the acceleration and restored the note's original maturity date").

Here, the Defendants have produced public records from the Colorado District Court for Mesa County, indicating that they withdrew and dismissed their 2014 NED action against Mr. Murry in 2018, before the six-year limitations period for enforcing the debt expired.[10]  *See* Docket #32-7, 32-8.  By operation of *Paggen*, the dismissal of the NED action operated to decelerate the debt embodied by Mr. Murry's note, restoring the debt to one payable in installments and resetting the limitations period for the collecting the unpaid balance on the Note.  The Defendants commenced a new NED proceeding against Mr. Murry in 2021, but there can be no argument that the six-year limitations period of C.R.S. § 13-80-103.5 has run as to that newly-accelerated debt.  Accordingly, the Court agrees with the Defendants that Mr. Murry's Claim One is without colorable merit and is subject to dismissal.  Thus, the Defendants are entitled to judgment on the pleadings on that claim as well.

## CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that the Defendants' Motion to Dismiss (D. 32) be construed as a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), that it be **GRANTED**, and that all of Mr. Murry's claims in this action be **DISMISSED**.

---

[10]   Mr. Murry's Second Amended Complaint alleges that "the holder of the note has never decelerated the note" and "has never withdrawn the [2014] NED," seemingly contradicting the Defendants' assertions.  Docket #17 at 5.  Ordinarily on a Rule 12 motion, the court must accept as true all well-pled facts asserted by the plaintiff, but "factual allegations that contradict a properly-considered document are not well-pleaded facts that the court must accept as true." *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013).  The Court may take judicial notice of publicly-available filings in the docket of the 2014 NED.  *Bertolo v. Lind*, 825 Fed.Appx. 581, 585 n. 5 (10th Cir. 2020).  Accordingly, the Court rejects Mr. Murry's assertions that the 2014 NED was never withdrawn and his legal conclusion that the Note was never decelerated.

**12**

Pursuant to Fed. R. Civ. P. 72(b), the parties shall file any Objections to this Recommendation within 14 days of its service upon them.

Dated at Grand Junction, Colorado this September 22, 2022.

_____

Gordon P. Gallagher
United States Magistrate Judge